16109

### VOGEL v. JOHNSON
(48 S. E. (2d) 717)

*Mr. Claude R. Dunbar,* of Spartanburg, for Appellant,

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, for Respondent,

178

*Mr. Claude R. Dunbar,* of Spartanburg, for Appellant, in reply.

July 16, 1948.

OXNER, J.: About 9:00 P. M. on June 19, 1946, a collision occurred in Spartanburg County, near the town of Inman, between a Buick automobile driven by Andrew B. Vogel, respondent on this appeal, and a Ford truck, loaded with peaches, driven by J. Frank Johnson, a brother of appellant, Aaron Johnson. Both vehicles were damaged. The other occupants of the Buick were Vogel's wife, J. P. Earle, M. W. Meyerson, his wife and their two children, all of whom were injured. Earle sustained the most serious injuries. He lost his left eye and received a severe shock to his nervous system. The injured were removed in an ambulance and a taxi to the General Hospital in Spartanburg. The driver of the truck was also brought to Spartanburg, apparently under arrest, by a highway petrolman.

After Vogel and the others in his car were given first aid, the highway patrolman carried Frank Johnson to the hospital and informed Vogel that Johnson was the driver of the truck involved in the collision. Vogel demanded settlement of the matter. Johnson stated that he had no money but thought his brother, Aaron Johnson, whom Vogel had known for some time, would help him. Aaron Johnson, who by this time had arrived at the county jail in response to a message from his brother, was then called to the hospital where a discussion with reference to a compromise settlement of all claims growing out of the collision was had in the basement between Vogel, his son-in-law, who came to the hospital immediately after being notified of the accident, and Aaron and Frank Johnson. During this conversation Vogel stated that he thought he had an insurance policy which covered the hospital and medical expenses of anyone injured while riding in his automobile, but was not sure of the exact nature and extent of such coverage. It

was finally agreed that Frank and Aaron Johnson would pay the damage to Vogel's car and all hospital and medical bills of the occupants in excess of that covered by the policy mentioned. Vogel suggested that the agreement should be reduced to writing. There was no objection to this. Vogel could not use his right hand because it was bandaged and dictated the proposed agreement to his son-in-law who wrote it on a piece of note paper. It was then handed to Aaron Johnson, who signed it and added the words "for hospitalization" under his signature. With this addition, the memorandum was as follows:

"I hereby agree to reimburse A. B. Vogel, and occupants of the car for damages to the extent of the automobile, doctors bill and hospitalization, in wreck with truck driven by J. F. Johnson.

"This releases us of any other liability.

"Aaron Johnson

"For Hospitalization."

Vogel contends that as soon as the paper was signed it was delivered to his son-in-law by Aaron Johnson who then left the hospital with his brother. Aaron Johnson says that he added the words "for hospitalization" in order to limit his liability solely to that item. He contends that after signing the agreement, he handed it to his brother who stated that his understanding was that they were to pay only the damage to Vogel's car and declined to sign the agreement; that Vogel then asked to see it and when the paper was handed to him for inspection, he immediately walked away with it; and that as Vogel was leaving, he told him 'the paper was worthless because his brother had not signed it.

This action, which is based on the agreement mentioned, was brought by Vogel against Aaron Johnson for the recovery of damages. to Vogel's automobile and of medical expenses incurred by him. It is alleged in the complaint that the instrument sued upon was executed "in order to effect

a compromise of the probable liability" of Aaron Johnson and his brother growing out of said automobile collision. Within due time, defendant moved to strike certain allegation from the complaint and to make it more definite and certain in various particulars. These motions were overruled. A demurrer was also interposed upon various grounds and overruled. The defendant then filed an answer in which he denied that the truck was owned by him or that it was being used in connection with his business, and alleged that his sole purpose in signing the agreement was to compromise any liability on the part of his brother, but that said agreement was not to be effective unless his brother also executed it, which he refused to do. It was further alleged that the agreement clearly contemplated, and it was so understood at the time it was executed, that it was to be in full compromise settlement of all claims by any of the occupants of the plaintiff's automobile and was not to be effective unless all agreed to settle their claims on the basis outlined in the agreement, and that some of the parties had declined to agree to the proposed settlement The defendant further set up a counterclaim in which he sought to recover damages alleged to have been sustained on account of fraud and deceit on the part of the plaintiff in obtaining physical possession of the instrument sued upon. When the case was called for trial, plaintiff's counsel stated that plaintiff's hospital and medical bills had been paid by the insurance company and moved to amend the complaint by eliminating these items. The motion to amend was granted. At appropriate stages of the trial the defendant moved for a nonsuit and for a directed verdict. These motions were refused. At the close of the testimony, the plaintiff moved for a directed verdict on the defendant's counterclaim. This motion was granted. The case was then submitted to the jury on the issues raised by the complaint and answer and a verdict was returned in favor of the plaintiff for the sum of $600.00.

Defendant made a motion for a new trial which was refused, and this appeal followed.

Although the offending truck was registered at the time of the accident in appellant's name, there is no testimony showing that his brother was operating it as his agent or that he had any connection with the peaches being transported. He contends that the truck was sold and delivered to his brother on the day preceding the accident. It developed during the testimony that the respondent had an insurance policy covering all medical expenses, not exceeding $500.00 for one person, incurred by anyone as a result of injuries received while riding in his car. Under this policy the insurance company paid all hospital and doctor's bills of those injured except those incurred by Earle, amounting to approximately $1,500.00, on which it paid the maximum liability of $500.00. It is undisputed that some of those injured have never assented to the terms of the proposed agreement. Meyerson testified that he did not consider himself bound by the agreement but was willing to abide by it if respondent felt that he should. He said no effort had been made to have the court approve the agreement as to his minor children who were injured. Earle, who lost the sight of one eye and was still under the care of a physician when the case was tried, testified that he had never agreed to the proposed settlement and did not consider himself bound by it.

There are 35 exceptions, covering 20 pages of the printed record, but we need only determine whether the Court below erred in refusing to direct a verdict in favor of appellant upon the ground that no obligation attached to him since some of those injured declined to agree to the proposed settlement. This question was raised by appellant's demurrer and in his motions for a nonsuit and a directed verdict. The Court below held that "the agreement is a several and not a joint agreement", and that it was only necessary for respondent to accept its terms in

order to constitute a completed contract between him and appellant. The Court below stated: "It (the agreement) does not in its terms or by implication state that a condition precedent to defendant's liability under the agreement is that all the occupants of the car must accept the terms before anyone will be bound."

The agreement in question was dictated by respondent, a layman, who obviously was not versed in the art of drafting instruments of this nature. It represents a rather crude effort to embody the terms of the settlement verbally agreed upon, one feature of which, that the proceeds of any insurance by respondent should be applied on the medical expenses, was not incorporated in the written memorandum. This oversight, however, is unimportant since all parties concede that appellant's liability was to be limited in this respect.

Notwithstanding the awkward manner in which the agreement is expressed, we think the meaning is clear when the agreement is considered in connection with the circumstances under which it was executed. In order to compromise and settle all claims against his brother growing out of this accident, appellant was willing to pay the actual damages to respondent's car and any and all medical expenses remaining unpaid after the application of the proceeds of insurance under respondent's policy. It was manifestly intended to formulate a basis for the settlement of all claims. To construe the agreement so as to permit respondent or any passenger in his car to accept its terms and allow the others to reject them would defeat the very object appellant had in mind in undertaking to assist his brother. A basis for the settlement of the entire matter was of the essence of the proposed agreement. Respondent was purporting to act for all who were injured and it was never contemplated that appellant would be bound unless respondent's acts were accepted or ratified by the others.

If any doubt remains as to the proper construction of this agreement, it is removed by respondent's own testimony and that of his son-in-law. Respondent testified that appellant stated at the hospital that "he would pay me for the damage to the car and all hospital bills over and above the hospital insurance that I might have on each occupant of the car", to which he replied: "Let's go upstairs and see these other men in the accident." He then found that he was too weak to go and his son-in-law, along with appellant and his brother, went upstairs and saw Meyerson. Upon their return they reported to respondent that Meyerson said anything respondent did would be satisfactory to him. The agreement was then prepared. Earle, the only other male adult in the car, was in such poor physical condition that he could not be consulted with reference to the proposed settlement. On cross-examination, respondent testified as follows:

"Q. I believe you stated a while ago that you told them to go up and see if the agreement which you and he were contemplating entering into would be all right with Mr. Meyerson? A. Yes, and the other occupants.

"Q. Then you were concerned with getting an agreement satisfactory with all occupants? A. Yes, sir."

It is true that the following also appears in respondent's cross-examination: "Q. Mr. Vogel, do you recall any statement to the effect that if the others did not agree to it that nobody would be bound? A. No, sir; that wasn't mentioned." Although such a statement may not have been expressly mentioned, we think it is clearly implied from the testimony we have quoted.

Respondent's son-in-law, a witness in his behalf, testified on direct examination that appellant made the following remark just before signing the agreement: "The whole thing is I do not want to be sued for over and above what's written on this piece of paper". The following is taken from his testimony on cross-examination:

"Q. You went upstairs to see Mr. Meyerson? A. Yes, sir.

"Q. And he stated that whatever Mr. Vogel did would be all right with him? A. Yes, sir.

"Q. And then after that when you went back down stairs it was quite evident that Mr. Johnson did not want to be sued by anybody in that car, wasn't it? A. For over and above what was stated.

"Q. And that the whole thing he wanted was something that would prevent all these lawsuits above what he mentioned in here? A. Yes.

"Q. By all the occupants in that car? A. Yes, sir.

\* \* \*

"Q. Do you remember Mr. Vogel's remark that they would not be called on for anything until all the insurance he had and all the insurance all occupants of his car had had been applied first? A. Yes, sir.

"Q. And that was before he signed this instrument? A. Yes."

The foregoing testimony admits of only one reasonable construction namely, that the agreement was to form a basis for the settlement of all claims and that acceptance of its terms by all parties was essential to make it a completed contract. It is suggested that the parties must have known that they could not bind the minors who were injured, but it may be doubted whether these laymen were familiar with the procedure necessary to bind a minor in a matter of this kind. They may have assumed that the father could speak for the interests of his children.

Since in passing on a motion for directed verdict the testimony must be viewed in the light most favorable to the adverse party, we have not reviewed the testimony offered by appellant. It is sufficient to say that his testimony was to the effect that he was not to be bound until all interested parties accepted the terms of the proposed

agreement. As previously stated, he made the further contention that the agreement was not to be effective unless it was also executed by his brother and said that when his brother refused to sign it, respondent secured possession of the paper by fraud; but upon these issues the testimony was conflicting.

Appellant has also appealed from the ruling of the trial Judge in directing a verdict in favor of respondent on the counterclaim. There was no proof that appellant suffered any damage as a result of the matters set forth in the counterclaim. The exceptions imputing error to the Court below in directing a verdict in favor of respondent on the counterclaim are, therefore, overruled.

The judgment entered on the verdict of the jury is reversed and the case is remanded for entry of judgment in favor of appellant on the issues raised by the complaint and answer, as provided by Rule 27 of this Court.

BAKER, C.J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.